TotteN, J.,
delivered the opinion of the court.
In February, 1853, the clerk of the circuit court of Carroll, in pursuance of a decretal order of that court, sold at public auction to Peter Pearson, a slave George, at $1005, and reported the sale to the next term, .April 1853.
The plaintiff petitioned the court before the report .was confirmed, to set aside the sale and to be relieved therefrom, on the ground, that at the time of the sale, the slave was “ diseased and unsound/” a fact at that time unknown to the plaintiff, but known, as he believes, to the owners of the slave.
The defendants answer and deny the equity of the petition; deny that the slave was unsound; deny any information of unsoundness; and deny any fraudulent practice in the premises.
Thereon proof was taken, and at the hearing, the *582 sale was set aside, and defendants appealed to this court.
It appears, that the slave belonged to the estate of Thomas Williams, who died intestate, June 1852. The sale of George and other slaves, was for distribution among the children of the intestate.
We are satisfied that the evidence fully sustains the averment of the petition, that the slave was diseased and unsound at the time of the sale. He had a protracted sickness, which commenced in September 1851, and continued until late in the ensuing spring. He was not all the time confined, but his malady continued and he was feeble and languid. Dr. McCall considered it a case of liver disease and indigestion, which caused a general disorder of the system. His health then revived, and with occasional exceptions, he was able to perform ordinary labor on the farm in 1852. At the time of the sale, he was so far restored as to present the appearance of health to an ordinary observer. But soon after, relapsed into the same malady as before. He had never been entirely cured. Such, we think, is the true result of the evidence, which is very voluminous. We are. satisfied, also, that the owners of the slave stand acquitted of any fraudulent practice in relation to the sale. They no doubt considered his health restored, and made no suggestions in regard to it. But it is the opinion of the physicians and others, that in the actual . -condition of the slave, he was not worth half the price agreed to be given for him.
Bor the defendants, it is argued, that the rule of caveat emptor applies, and that the petitioner purchased at his peril.
*583 Certainly, the general rule is, that if there be no warranty or fraud on the part of the seller, the buyer, who relies upon himself \ must abide by all loss arising from latent defects; equally unknown to both parties. Leixas vs. Wood, 2 Caine’s R., 55. 2 Kent Com. 478.
And so it is also true, that a sound price does not per se imply a' warranty. Story on Sales, § 370.
These principles apply to sales made by the mere, act and agreement of the parties. But where a sale is made under the decree of a court of chancery, it is not final and complete until approved and confirmed by the court. This is a settled rule. Childress vs. Hurt, 2 Swan, 488. Morton, Smith & Co., vs. Sloan, 11 Humph. R., 278. Henderson vs. Lowry, 5 Yer. R., 244.
The bid is merely an offer, which the court, in its legal discretion,, may accept or refuse; and therefore, the bidder is not liable for any loss or injury that may happen to the estate before the report is confirmed. Until then, he is not owner or purchaser. 1 Sug. on Tend., 60.
Now, before the sale is confirmed, while it is in ■fieri, a latent defect is discovered in the quality of the slave, which greatly lessens its value. And if it were a sale by the parties, and the contract executed, the purchaser would be without remedy, under the rule caveat emptor.
But the contract is not executed, and the sale remains subject to the control of the court under whose order it was made.
No fault ean be imputed to' the purchaser, and it must be true that it would be unjust and inequitable to enforce the sale against him, by the exercise of the *584 powers of the court oyer the transaction. It may indeed be assumed, that the court has no power to decree, that which is unjust and inequitable.
The case may be assimilated to a bill for the specific execution of a contract, and the rule is to deny the relief “except in cases where it would be strictly equitable to make such a decree.” It is no answer in such case to say, that the contract is legal, and that an action at law can be maintained upon it. The party will be remitted to his legal remedy, if any he have, upon the inequitable transaction. 2 Story Eq. Juris. § 750. 2 Kent Com. 490.
Much more will the court refuse to sanction and enforce an inequitable contract, made under its own decree, and subject to its discretion.
"We may observe, that a chancery sale executed and confirmed by the final action of the court, stands on the same ground, and is governed by the same principles as an executed contract made by parties, without the intervention of the court. But in the present case, the contract was not complete, and could have no validity without the sanction of the court. This sanction,, we think,’ was properly refused.
Affirm the decree.